UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KMART CORPORATION, a Michigan corporation,

       Plaintiff,

v.

FOOTSTAR, INC., a Delaware corporation,

       Defendant.

No. 09 C 3607

Magistrate Judge Susan E. Cox

MEMORANDUM OPINION AND ORDER

In July 2005, Judy Patrick was shopping at Kmart and while being assisted by an employee, was struck by a stroller that fell off a shelf. The employee helping Ms. Patrick was, allegedly, a defendant Footstar, Inc. ("Footstar") employee. Ms. Patrick sued Kmart Corporation ("Kmart") and in October 2008, Kmart settled the lawsuit paying $300,000 to Ms. Patrick and her husband. Now Kmart has filed suit against Footstar alleging that Footstar is required to reimburse and indemnify Kmart for the costs Kmart incurred in the defense and settlement of Ms. Patrick's case. Footstar, however, filed four affirmative defenses: the indemnity agreement Kmart relied upon is void, Kmart cannot seek reimbursement because it failed to notify Footstar in a reasonable time, Kmart breached its duty of reasonable notice, and, therefore, Kmart is estopped from seeking fees and costs. Before the Court is Kmart's motion to strike Footstar's affirmative defenses. That motion is granted in part and denied in part as stated below [dkt 32].

**I.     Facts**

In June 1995, Kmart and Footstar entered into an agreement with respect to the operation of the footwear departments in various Kmart stores. Then, on August 24, 2005, Kmart and Footstar entered into another agreement that purportedly superseded the June 1995 agreement and remained in effect through December 31, 2008 (hereinafter the "Master Agreement"). The Master Agreement provided that Footstar would operate (by their partially and wholly owned subsidiaries) certain footwear departments in Kmart. This included Kmart store number 4296, where Ms. Patrick was injured.

**II.    Legal Standard**

An affirmative defense is one that "rais[es] new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true."[1] Courts may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[2] These motions are generally disfavored but may be used to "remove unnecessary clutter from the case."[3] It is only appropriate to strike an affirmative defense when it is facially insufficient.[4] Like pleadings, affirmative defenses must simply articulate "a plausible set of underlying facts."[5] So when complex issues are involved, a motion to strike should be denied.[6] For further guidance, a three part test is used to examine the sufficiency of affirmative defenses: (1) is the matter properly pleaded; (2) does the defense comply with Federal Rules of Civil Procedure

---

[1] *JPMorgan Chase Bank, N.A. v. Mal Corp.,* No. 07-2034, 2009 WL 804049, *1 (N.D. Ill. March 26, 2009)(quoting BLACK'S LAW DISCTIONARY 430 (7th ed. 1999)).
[2] Fed.R.Civ.Pro. 12(f).
[3] *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1294 (7th Cir. 1989).
[4] *Heller Financial, Inc.,* 883 F.2d at 1294.
[5] *JPMorgan Chase Bank, N.A.,* No. 07-2034, 2009 WL 804049, *2.
[6] *AEL financial LLC v. City Auto Parts of Durham,* No. 08-3490, 2009 WL 2778078, *9 (N.D. Ill., August 31, 2009).

8 and 9; and (3) does the defense withstand a Rule 12(b)(6) challenge.[7]

## III.    Analysis

Kmart attacks all of Footstar's affirmative defenses. Kmart does not, however, dispute that Footstar's affirmative defenses are properly pleaded or that they are in compliance with Rules 8 and 9. The only concern is with the third prong of the test, which is whether they sufficiently state claims under Rule 12(b)(6). The First Affirmative Defense - alleging that the indemnity agreement Kmart relies on is illegal - Kmart claims misconstrues the part of the Illinois Landlord and Tenant Act that is the basis for the defense. Kmart next argues that the Second Affirmative Defense should be stricken because though it claims waiver, an alleged delay in notifying Footstar of the underlying lawsuit is not a waiver of its indemnity rights. Kmart also asserts that the Third Affirmative Defense - claiming a failure to notify Footstar of the underlying case - is insufficient because any alleged breach of the notice provision in the Master Agreement would not affect Kmart's right to indemnity. As to the Fourth Affirmative Defense, Kmart claims, simply, that Footstar cannot establish all of the elements required for equitable estoppel.

### A.    First Affirmative Defense - **Lease or License**

Under this affirmative defense, Footstar claims that the Master Agreement, relied upon by Kmart, is a lease of real property and that the indemnity provision in the Master Agreement violates the Illinois Landlord and Tenant Act.[8] Specifically, section 18.1 of the Master Agreement requires Footstar, as the licensee, to

> reimburse, indemnify, defend and hold harmless Licensor and its subsidiaries and

---

[7]*JPMorgan Chase Bank, N.A.,* No. 07-2034, 2009 WL 804049, *2.
[8]*See* 765 ILCS §705/1.

> affiliates...from and against any and all damage, loss, cost, expense or penalty...by or on behalf of any person, arising out of Licensee's performance or failure to perform under this Agreement and/or the Existing Master Agreement...including, but not limited to, personal injury and death claims...[9]

The Landlord and Tenant Act, however, provides for a liability exemption that states every agreement,

> in connection with or collateral to any lease of real property, exempting the lessor from liability for damages for injuries to person or property caused by or resulting from the negligence of the lessor, his or her agents, servants or employees, in the operation or maintenance of the demised premises or the real property containing the demised premises shall be deemed to be void as against public policy and wholly unenforceable.[10]

So Footstar argues that because the Landlord and Tenant Act voids indemnity agreements contained in leases of real property, and because the Master Agreement was a lease of real property, its affirmative defense is sufficient. The question that follows, naturally, is whether the Master Agreement, in fact, constitutes a lease. Or whether, as Kmart argues, the Master Agreement is merely a licensing agreement whereby Kmart agreed to allow Footstar to operate footwear departments and sell licensed footwear in certain Kmart stores and, thus, it is not subject to the Landlord and Tenant Act.

To determine whether a contractual agreement is a lease or a license, courts look to the legal effect of the contract's provisions and the intent of the parties, not the language used in the contract.[11] Specifically, to be considered a lease there must be the following: "a definite agreement

---

[9] Amended Complaint, Exh A, §18.1.
[10] 765 ILCS §705/1.
[11] *Stevens v. Rosewell,* 523 N.E.2d 1098, 1101 (Ill.App.Ct. 1988).

as to the extent and bounds of the property; a definite and agreed term; and a definite and agreed rental price and manner of payment."[12] Conversely, a license is "not assignable, and merely gives another the right to use the premises for a specific purpose with the owner retaining possession and control."[13]

Kmart supports its position that the Master Agreement is not a lease by pointing to the following provision in the Master Agreement,

> [e]ach party is and at all times shall be an independent contractor in the performance of this Agreement, and neither party is authorized to bind the other party to any agreement or contract, in any manner, with any third party. The parties do not intend this Agreement to constitute a joint venture, partnership or lease and nothing herein shall be construed to create such a relationship.[14]

This language, Kmart argues, shows that the parties expressly agreed that they were not entering into a lease. Still relying on language, Kmart then points to the Master Agreement's provisions that Footstar pay Kmart a "License Fee" and a "Miscellaneous Expense Fee."[15]

In addition to relying on the wording of the agreement, Kmart also references several requirements in the Master Agreement that support a license, not a lease. For example, the Master Agreement does not define the extent and bounds of the premises to be used by Footstar. It only states that Kmart's Store Planning Department will create those boundaries.[16] Then the Master Agreement states that Kmart may at any time "change the location and size of the Footwear

---

[12] *Stevens,* 523 N.E.2d at 1101.
[13] *Id.*
[14] Amended Complaint, Exh A, §26.1.
[15] Amended Complaint, Exh A, §6.1.
[16] Amended Complaint, Exh A, §5.1.

Department..."[17] The Master Agreement is also non-transferable[18] and no party may "assign or sublicense its rights and/or duties" under the agreement.[19] Unlike a lease, Kmart also possesses the sales figures for the footwear departments and simply shows Footstar the fees it owes to Kmart, which are not "definite and agreed" but are, rather, subject to the gross sales during the preceding week.[20] Finally, Kmart notes that several provisions in the Master Agreement give Kmart extensive control over the premises and how Footstar operates. Included is a requirement that Footstar comply with Kmart's "Rules and Regulations," which incorporate the use of advertising, service marks, all hiring and terminations, how to greet customers, and general requirements for operation.[21] There is also a provision stating that Footstar submit and discuss its annual business plan with Kmart, that Kmart has control over advertising, and that Kmart must approve the furniture and equipment Footstar uses in its department.[22]

Kmart then relies on *Millennium Park Joint Venture, LLC v. Houlihan*, to bolster its contention that the Master Agreement is a licensing agreement and not a lease.[23] In that case, the issue was whether the agreement was a taxable lease or, in fact, a license (which would not be taxed).[24] The court ruled that the terms more closely resembled a license because the park district retained "extensive control" over the plaintiff's operations.[25] The court noted that according to the parties' agreement the plaintiff was subject to the park district's requirements as to uniforms,

---

[17] Amended Complaint, Exh A, §5.1.
[18] Amended Complaint, Exh A, §3.1.
[19] Amended Complaint, Exh A, §19.1.
[20] *See Stevens,* 523 N.E.2d at 1101; *see also* Amended Complaint, Exh A, §6.1(b)(i); §6.2.
[21] Amended Complaint, Exh A, §3.2 at Exh B.
[22] Amended Complaint, Exh A, § §3.7, 14.1, and 13.1.
[23] 911 N.E.2d 517 (Ill.App.Ct. 2009).
[24] *Millennium Park Joint Venture, LLC,* 911 N.E.2d at 528 (stating that under the Property Tax Code, leases are subject to a tax but licenses are not).
[25] *Id.* at 531.

cleanliness, signage, times and dates of operation, and generally how plaintiff would conduct its business.[26] Because the park district controlled "many facets of the plaintiff's operation on park property," without a fixed rent, it was deemed a license.[27]

Footstar's argument, however, is that the Court should not decide this issue by merely looking at "a couple of paragraphs in the Master Agreement." Footstar first points out that the use of the term "license" does not itself make the instrument a license rather than a lease. On this point the Court agrees.[28] Footstar also principally relies on *Stevens v. Rosewell*.[29] *Stevens* involved a service agreement between McDonald's Corporation and a community college. Though the agreement itself stated that it was a license and not a lease, the appellate court found that it was a lease because the agreement was for a fixed term, a fixed rent, there was a fixed location, and because McDonald's had exclusive control of the kitchen facilities.[30] Finally, Footstar further relies on *Simhawk Corporation v. Egler*, a 1964 case where there was no dispute that the agreement at issue was a lease.[31] The issue was, rather, whether the lease required the lessee to continue to use the premises as a retail shoe store and pay a percentage of the profits as a portion of the rent.[32] Footstar appears to cite to this case only to support its position that paying rent in the form of a percentage of the gross receipts or profits is typical of a lease agreement.

As the court found in the *Millennium Park* case, here the terms of the Master Agreement more closely resemble those of a license. Like in that case, here too the facts are distinguishable

---

[26]*Id.*
[27]*Id.* at 532-31.
[28]*See Dargis v. Paradise Park, Inc.,* 819 N.E. 2d 1220, 1230 (Ill.App.Ct. 2004)(noting that the use of the term "license" in an agreement "does not necessarily make it so.").
[29]523 N.E.2d 1098.
[30]*Stevens,* 523 N.E.2d at 1101-02.
[31]202 N.E.2d 49 (Ill.App.Ct. 1964).
[32]*Simhawk Corp.,* 202 N.E.2d at 49-51.

from *Stevens* because Kmart sufficiently listed the many provisions that support, substantively, how the Master Agreement is a license. These factors include Kmart's retention of extensive management and control over the location, size, and method of operations of the Footwear departments. Kmart's motion is, therefore, granted as to Footstar's first affirmative defense.

**B.     Second Affirmative Defense - Waiver**

Footstar's second affirmative defense asserts that Kmart had knowledge of Ms. Patrick's accident but failed or refused to notify Footstar for an unreasonable period of time, thereby waiving its right to indemnity. Kmart argues this affirmative defense should be stricken because it is a conclusory allegation of waiver unsupported by relevant facts.

Waiver is an equitable defense that must be pleaded "with the specific elements required to establish the defense."[33] At a minimum, the party asserting the defense is required to put the other party on notice as to the legal bases for its defense.[34] Waiver is defined under Illinois law as the "intentional relinquishment of a known right."[35]

Kmart first points to the "waiver" provision in the Master Agreement as support for its position that Footstar cannot advance a waiver defense, which provides that,

> Silence, acquiescence or inaction shall not be deemed a waiver of any right. A waiver shall only be effective if it is in writing and signed by an authorized officer of the party to be charged.[36]

Relying on this language Kmart argues that despite any delay, the Master Agreement expressly preserves its rights. In other words, Kmart explains that the very conduct listed in the Master

---

[33]*Reis Robotics USA, Inc. v. Concept Industries, Inc.*, 462 F.Supp.2d 897, 907 (N.D. Ill. 2006).
[34]*Reis Robotics USA, Inc.*, 462 F.Supp.2d at 907.
[35]*MPC Containment Sys., Ltd. v. Moreland*, No. 05-6973, 2008 WL 1775501, *3 (N.D. Ill. April 17, 2008).
[36]Amended Complaint, Exh A, §21.8.

Agreement - delay or inaction - is that which will *not* result in waiver. (And Footstar is claiming the opposite, that delay in fact results in a waiver). Kmart next cites to this Circuit's view that,

> "bare-bones," conclusory allegations do not meet the pleading requirements. "It is unacceptable for a party's attorney simply to mouth [affirmative defenses] in formula-like fashion ('laches,' 'estoppel,' 'statute of limitations,' or what have you), for that does not do the job of apprising opposing counsel and this court of the predicate for the claimed defense-which after all is the goal of notice pleading."[37]

Footstar, however, principally argues that an issue like the application of waiver is not to be determined on a motion to strike affirmative defenses. Footstar then makes the somewhat general statement that courts must look to the totality of the circumstances to find waiver. But the most convincing of Footstar's arguments is a citation to our colleague's decision where the district court denied a motion to strike an affirmative defense of waiver because, there, despite a non-waiver clause, the court held that the existence and enforceability of the non-waiver provision could be challenged.[38] In that case, the issue was whether the plaintiff had waived its right to enforce a repurchase provision of a loan agreement because it had "reviewed, considered, and approved" all factual statements in the loan document.[39] The court found that the defense was "not 'patently defective,'" and also held that despite the non-waiver clause, the defendant had pleaded sufficient facts from which to infer that the non-waiver clause did not bar the defendant's waiver defense.[40]

Here, Footstar has only pleaded that Kmart had knowledge of the underlying lawsuit when it was filed and that by failing to notify Footstar of the lawsuit, it relinquished a known right to

---

[37] *In re Kmart Corp.,* 318 B.R. 409, 414 (Bankr. N.D. Ill. 2004)(citing *State Farm Mut. Auto. Ins. Co. v. Riley,* 199 F.R.D. 276, 279 (N.D. Ill. 2001))(citations omitted).
[38] *Household Financial Services, Inc. v. Northeastern Mortg. Inv. Corp.,* No. 00-0667, 2000 WL 816795, *3 (N.D. Ill. June 22, 2000).
[39] *Household Financial Services, Inc.,* No. 00-0667, 2000 WL 816795 at *3.
[40] *Id.*

indemnity. Footstar has not asserted factual support that would somehow thwart the waiver provision. We, nonetheless, agree that though non-waiver provisions are enforceable in Illinois, "it is still possible to waive such a clause."[41] Evidence of waiver may even be excluded at the time of trial but, at this stage in the litigation, Footstar may proceed with its affirmative defense of waiver.[42]

**C.     Third Affirmative Defense - Late Notice**

Footstar's third affirmative defense alleges late notice. In other words, Footstar claims that Kmart had notice that the underlying lawsuit was filed on May 17, 2006 but failed or refused to notify Footstar for more than one year, did not request a defense but instead defended itself, and did not reserve a right of recovery from Footstar. Though not specifically pleaded in the affirmative defenses, Footstar relies on section 18.3 of the Master Agreement. That provision requires both parties to "timely advise the other party of any lawsuit, claim or proceeding for which an indemnity is provided..." and to "keep the other party advised at all times concerning the handling of such matters..."[43]

Kmart does not necessarily contest that it failed to give notice sooner but, rather, argues two points: (1) nothing in the Master Agreement makes section 18.3 a condition precedent to the other party's obligations to indemnify, which is under section 18.1; and (2) even if Kmart breached the notice provision, the well-settled rule is that such a breach does not relieve the indemnitor of its obligation. As to the first point, Kmart cites to a Seventh Circuit case decided under New York law where the court addressed this precise issue: notice as an express condition precedent.[44] In that case, the court cited a New York court and held that "'a contractual duty ordinarily will not be construed

---

[41]*Roboserve, Inc. v. Kato Kagaku Co., Ltd.,* 78 F.3d 266, 277 (7th Cir. 1996).
[42]*See Roboserve, Inc.,* 78 F.3d at 277 (holding that the district court properly excluded evidence of waiver).
[43]Amended Complaint, Exh A, §18.3.
[44]*Smurfit Newsprint Corp. v. Southeast Paper Mfg.,* 368 F.3d 944, 951 (7th Cir. 2004).

as a condition precedent absent clear language showing that the parties intended to make it a condition.'"[45] Because there was no clear language to indicate that notice was an express condition precedent to the indemnity provision, the court held that the lack of prompt notice did not inhibit the plaintiff's claim for indemnity.[46]

Though not guided by New York law in this case, Kmart urges us to take the same view. Kmart does, also, note the general principal in Illinois that "[c]onditions precedent...are not favored by Illinois courts, and contracts will not be construed as having conditions precedent unless required to do so by plain, unambiguous language."[47] On this point, we agree. Footstar does not point to, and we do not see, any language in the Master Agreement that provides indemnification only if section 18.3 is followed.

Kmart next argues that despite Footstar's argument that a material breach by one party - of one provision - justifies non-performance of the contract, Footstar is nonetheless required to fulfill its obligation to indemnify. Kmart asserts that though the Illinois Supreme Court has not ruled on this particular point, other cases point to the conclusion that a failure to give notice to an indemnitor does not relieve the indemnitor of its obligation. Kmart cites to *Karas v. Snell* for this proposition.[48] In that case, on a motion for summary judgment the Supreme Court of Illinois addressed the validity of a statutory provision that provided for indemnification by the City of Chicago for any judgment against a police officer for injury to person or property caused by that officer while he was on duty.[49] There, the Court noted the origins of the "procedure by which the defendant gives notice of the

---

[45] *Smurfit Newsprint Corp.,* 368 F.3d at 951.
[46] *Id.*
[47] *Boulevard Bank Nat. Ass'n v. Philips Medical Sys. Int'l,* 811 F.Supp. 357, 365 (7th Cir. 1993).
[48] 142 N.E.2d 46 (Ill. 1957).
[49] *Karas,* 142 N.E.2d at 48-49.

pendency of an action," stating that the purpose was to estop the indemnitor from contesting the indemnotee's liability.[50] But as noted by Footstar, no mention was made in that case as to whether a breach would defeat a right of contractual indemnity (and notice was not required by the statute).

Kmart also argues, albeit in a footnote, that the current rule in Illinois insurance law - that an insurance company that breaches its duty to defend may not, thereafter, assert defenses to coverage (such as late notice) - means that Footstar should not be able to claim such defenses either. This is a somewhat confusing argument considering that notice would first be required for Footstar to even possibly defend the case. And logically, as Illinois courts have held, if the insurer's duty to defend is never properly triggered then application of the estoppel doctrine is not appropriate.[51]

We must remember that it is only appropriate to strike an affirmative defense when it is facially insufficient.[52] Here, Footstar's affirmative defense that a breach of the notice provision relieves its obligation to indemnify is not so facially insufficient to warrant, at this stage, that it be stricken. Though we agree with Kmart that notice may not be a condition precedent, we cannot say that a breach of one part of the Master Agreement would be immaterial or impertinent to Kmart's indemnification claim. Kmart's motion to strike Footstar's third affirmative defense is, thus, denied.

---

[50]*Id.* at 55.
[51]*Employers Ins. of Wausau v. Ehlco Liquidating Trust,* 708 N.E.2d 1122, 1135 (Ill. 1999).
[52]*Heller Financial, Inc.,* 883 F.2d at 1294.

**D.     Fourth Affirmative Defense - Equitable Estoppel**

Footstar's final affirmative defense asserts that because Kmart failed to notify Footstar of the underlying action or the potential claim, it foreclosed from Footstar the right to control the defense of the claim and lawsuit, which it is now called upon to indemnify. Footstar, therefore, alleges Kmart should be estopped from seeking reimbursement.

Here, Kmart claims that it had no duty to speak up about the underlying lawsuit. Kmart, however, does not address section 18.3 of the Master Agreement, which provides for the parties to timely advise the other of any "lawsuit, claim or proceeding."[53] Kmart then argues that Footstar has failed to allege that it acted in reliance on Kmart's purported delay. Kmart asserts that such would be required to survive a motion to strike because pleading estoppel requires a "recitation of adequate factual underpinnings" and "mere conclusions and puffery will not suffice."[54] Kmart agrees that a breach of the notice provision may change its burden of proof, but not Kmart's right to indemnification.

Kmart then relies on *Gadsby v. Health Insurance Administration, Inc.,* where the Illinois Appellate Court dismissed the plaintiff's fraud claim.[55] There, the plaintiff had been told he was eligible for benefits, several claims were even paid by the claims administrator, but later the plaintiff was denied coverage because he was a retiree and, in fact, not insured under the plan.[56] The court held, however, that because the copy of the benefit plan that plaintiff possessed set forth the eligibility requirements - of which he was not within - he could not show reasonable reliance on any

---

[53] Amended Complaint, Exh A, §18.3.
[54] *Household Financial Services, Inc.,* No. 00-0667, 2000 WL 816795 at *2.
[55] 522 N.E.2d 865 (Ill.App.Ct. 1988).
[56] 522 N.E.2d at 867-68.

misrepresentation.[57] Kmart contends that this case is similar because Footstar had a copy of the Master Agreement, which set forth that the parties did not waive any right through silence, acquiescence or inaction.[58] So essentially, even though in one provision Kmart agreed to notify Footstar of any lawsuit, in another provision, according to Kmart, it was protected if it failed to do so.

    Kmart may be correct that because of the non-waiver provision, no estoppel claim will alter Footstar's indemnity obligation. But noting again that this is a motion to strike, Kmart has failed to show that Footstar's affirmative defense is "immaterial" or "impertinent."[59] Footstar aptly notes that in the insurance context the "duty to defend necessarily includes the right to control the litigation,"[60] and here, Footstar claims that it did not know what was being defended until a year after the litigation began. Kmart's motion to strike Footstar's fourth affirmative defense is, therefore, denied.

**IT IS SO ORDERED.**

**ENTERED:** December 1, 2009

                                        **UNITED STATES MAGISTRATE JUDGE**
                                        **Susan E. Cox**

---

[57] *Id.* at 873.
[58] *See* Amended Complaint, Exh A, §21.8.
[59] Fed.R.Civ.Pro. 12(f).
[60] *Mobil Oil Corp. v. Maryland Cas. Co.,* 681 N.E.2d 552, 561 (Ill.App.Ct. 1997).