UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KMART CORPORATION, a Michigan corporation, | )<br>)<br>) |
| Plaintiff, | ) No. 09 C 3607<br>)<br>) Magistrate Judge Susan E. Cox |
| v. | )<br>) |
| FOOTSTAR, INC., a Delaware corporation, and LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Wisconsin corporation | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

On July 27, 2005, Judy Patrick ("Patrick") was shopping at a Kmart and, while being assisted by an employee, Patrick was struck and injured by a stroller that fell off a shelf. Patrick sued Kmart and the case settled. In this case, Kmart seeks indemnification from Footstar, Inc ("Footstar") and Footstar's insurer, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), because the employee helping Patrick was, allegedly, a Footstar employee. Liberty Mutual now seeks to dismiss two counts against it in the Amended Complaint, Counts III and IV, arguing that Kmart has not pleaded sufficient facts to show compliance with certain conditions precedent in the relevant insurance policy, which is attached to the Amended Complaint as Exhibit B. That motion is denied [dkt 50].

**I.    Procedural Background**

On June 15, 2009, Kmart filed its original complaint against Footstar, seeking

indemnification for costs incurred in the Patrick suit. The original complaint contained two counts against Footstar only. On October 30, 2009, Kmart filed its Amended Complaint adding Liberty Mutual as a defendant. The Amended Complaint alleges four counts: (I) breach of contract against Footstar; (II) declaratory judgment against Footstar; (III) breach of contract against Liberty Mutual; and (IV) declaratory judgment against Liberty Mutual.

Subsequent to the Court setting a briefing schedule for the instant motion, Kmart moved for leave to file a Second Amended Complaint [dkt 63]. The Court denied that motion but noted that we would consider the proposed Second Amended Complaint when deciding this motion. As discussed below, the Court finds that the Amended Complaint is sufficient for purposes of this motion. However, the Second Amended Complaint bolsters Kmart's opposition to this motion. The Court will, therefore, give leave to Kmart to file its Proposed Second Amended Complaint.

**II.     Facts**

Because there are two complaints, the Amended Complaint, upon which the motion to dismiss is based, and the proposed Second Amended Complaint, which Kmart heavily relied on during oral argument on this motion, we must distinguish the two complaints. For purposes of clarity we will briefly outline the allegations in the Amended Complaint and then highlight certain additional allegations that are included in the proposed Second Amended Complaint.

**A.     Amended Complaint**

In its Amended Complaint, Kmart alleges that in June 1995, Kmart and Footstar entered into an agreement with respect to the operation of the footwear departments in various Kmart stores. On August 24, 2005, a new agreement was reached that superseded the June 1995 agreement and remained in effect through December 31, 2008 (hereinafter the "Master Agreement"), which is

attached to the Amended Complaint as Exhibit A. The Master Agreement provided that Footstar would operate (by their partially and wholly owned subsidiaries) certain footwear departments in Kmart. This included Kmart store number 4296, where Patrick was injured.

Kmart then alleges that the Master Agreement contained a provision requiring Footstar to provide insurance for Kmart for any personal injury arising out of Footstar's work.[1] Kmart alleges that Footstar contracted with Liberty Mutual and obtained a Commercial General Liability Policy (hereinafter the "Policy").[2] Under the Policy, "insured" is defined to include,

> any person, organization, state or other political subdivision, trustee or estate for whom you have agreed in writing to provide liability insurance. . . .[3]

Kmart alleges, therefore, that it is an insured under the Policy.

The Amended Complaint also claims that on May 17, 2006, Patrick and her husband filed suit for the injuries Patrick suffered at the Kmart store (hereinafter the "Underlying Suit").[4] The accident occurred, according to Kmart, while an employee of Footstar was helping Patrick. But Patrick filed suit against only Kmart.[5] In oral argument, however, counsel for Kmart stated that there was a second amended complaint in the Underlying Suit that named Footstar as a defendant, but the Court does not have this document and, therefore, we cannot rely on it. Kmart alleges that it "timely notified" Footstar of the Underlying Suit and that, in turn, Footstar notified Liberty Mutual.[6] Liberty Mutual then provided a defense for Footstar but refused to defend and indemnify Kmart.[7] Kmart also alleges that it and the Patricks arranged a mediation conference and that Liberty

---

[1] Amended Complaint ¶ 17; Proposed Second Amended Complaint ¶ 17.
[2] Amended Complaint ¶ 12; Proposed Second Amended Complaint ¶ 12.
[3] Amended Complaint, Exh B, General Amendatory Endorsement, Part L, p. 11 of 13.
[4] Amended Complaint, Exh C.
[5] Amended Complaint, ¶ 22; Proposed Second Amended Complaint ¶ 27.
[6] Amended Complaint, ¶¶ 26-27; Proposed Second Amended Complaint, ¶¶ 28, 31.
[7] Amended Complaint, ¶¶ 28-29; Proposed Second Amended Complaint, ¶¶ 32, 39, 45.

Mutual and Footstar attended that conference, but did not offer any money towards settlement.[8] Kmart further alleges that it attempted, throughout the pendency of the Underlying Suit, to acquire a copy of the Policy, to determine whether it was covered under the Policy but that Liberty Mutual and Footstar refused.[9]

The Amended Complaint further alleges that on October 28, 2008, Kmart settled the Underlying Suit with the Patricks for $300,000. In addition, Kmart alleges that it incurred $141,755.92 in attorneys fees in defending the Underlying Suit.

**B.     Proposed Second Amended Complaint**

In its proposed Second Amended Complaint Kmart adds allegations to those already contained in the Amended Complaint. First, Kmart adds the allegation that the terms of the Policy did not require Kmart to notify Liberty Mutual.[10] Furthermore, Kmart alleges that Liberty Mutual never raised any complaints with regard to Kmart's notification, or lack of notification, to Liberty Mutual during the pendency of the Underlying Suit.[11] Kmart also alleges that Liberty Mutual knew Kmart had been sued but never contacted Kmart to ask it if it wanted Liberty Mutual to provide a defense.[12] Kmart references documents attached to its proposed Second Amended Complaint to support certain allegations that Liberty Mutual attempted to avoid providing coverage to Kmart and, by avoiding its obligation, Kmart was permitted to settle the Underlying Suit with or without Liberty Mutual's consent.[13] And though Kmart has already alleged that Liberty Mutual attended the mediation conference, it now adds to that allegation the claim that while at the mediation conference,

---

[8] Amended Complaint, ¶¶ 31-32; Proposed Second Amended Complaint ¶¶ 47-48.
[9] Amended Complaint, ¶ 34; Proposed Second Amended Complaint ¶ 50.
[10] Proposed Second Amended Complaint ¶ 30.
[11] Proposed Second Amended Complaint ¶¶ 33, 34.
[12] Proposed Second Amended Complaint ¶¶ 36, 37
[13] Proposed Second Amended Complaint ¶¶ 43-44, 53.

Liberty Mutual never objected to Kmart's settlement.[14] Finally, Kmart alleges that Liberty Mutual is estopped from raising defenses to coverage because of Liberty Mutual's failure to defend Kmart.[15]

### III. Legal Standard

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court will presume all well-pleaded allegations in the plaintiff's complaint to be true and resolve all doubts and inferences in the plaintiff's favor.[16] Federal Rule of Civil Procedure 8 dictates pleading requirements. Rule 8 does not require "detailed factual allegations."[17] However, "labels and conclusions" and formulaic recitations of the elements of a cause of action are unacceptable.[18] Instead, the standard requires sufficient factual content that permits the court to reasonably infer that, if true, the defendant is liable.[19] Nevertheless, if the plaintiff pleads facts that show he has no claim, or pleads particular facts showing an impenetrable defense, then he has pleaded himself out of court.[20]

### IV. Analysis

Liberty Mutual brings this motion to dismiss on the theory that Kmart failed to plead compliance with four conditions precedent. "A condition precedent is 'an act or event, other than a lapse of time, which must exist or occur before a duty to perform a promise arises.'"[21] First, Liberty Mutual argues that Kmart failed to plead compliance with two notice conditions precedent, which required Kmart to notify Liberty Mutual of any "occurrences" or lawsuits. Liberty Mutual

---

[14] Proposed Second Amended Complaint ¶ 48.
[15] Proposed Second Amended Complaint ¶ 55.
[16] *Roots P'ship v. Lands End, Inc.*, 965 F.2d 1411, 1416 (7th Cir. 1992).
[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[18] *Twombly,* 550 U.S. at 545.
[19] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).
[20] *McCready v. eBay, Inc.*, 453 F.3d 882 (7th Cir. 2006).
[21] *Dental Health Prods., Inc. v. Ringo,* Case No. 08-1039, 2010 WL 55839 (E.D. Wis. Jan. 5, 2010) (quoting JOSEPH M. PERILLO, CALAMARI AND PERILLO ON THE LAW OF CONTRACTS, § 11.5 (5th ed.)).

also claims Kmart pleaded itself out of court with regard to two other conditions precedent, which prohibited Kmart from settling or incurring legal expenses without Liberty Mutual's consent, which we will refer to as the "Consent to Settlement" conditions precedent. Kmart contends that it sufficiently pleaded compliance with the notice conditions precedent and pleaded facts showing that its compliance with the Consent to Settlement conditions precedent was waived by Liberty Mutual's failure to defend. During oral argument, Kmart emphasized its additional argument that Liberty Mutual must show Kmart's failure to comply with the Consent to Settlement conditions precedent prejudiced Liberty Mutual. Finally, Kmart argues that Liberty Mutual should be estopped from raising these conditions because of Liberty Mutual's wrongful refusal to defend.

We must also address, as a preliminary matter, the assertion by Kmart that New Jersey law, as opposed to Illinois law, may apply to this case. The conflicts of law issue was principally argued only as to how it relates to the conditions precedent requiring notice. Kmart also concedes that its estoppel argument would succeed only if Illinois law applies to the case.

**A.      Conflict of Laws**

Kmart notes that New Jersey law may apply to this case. Liberty Mutual, on the other hand, argues Illinois law controls this case. The state laws conflict over whether an insurer must show that it was prejudiced by the insured's failure to comply with a notice condition precedent. Under Illinois law, failure to comply with a notification condition precedent bars coverage regardless of prejudice to the insurer.[22] However, New Jersey law requires that the insurer be prejudiced by the lack of notice.[23] Therefore, under New Jersey law, even if this Court finds that Kmart failed to sufficiently plead compliance with the notice conditions, the Amended Complaint would remain

---

[22]*Country Mutual Ins. Co. V. Livorsi Marin, Inc.* 222 Ill.2d 303, 317 (Ill. 2006).
[23]*Sagendorf v. Selective Ins. Co. of Am.*, 679 A.2d 709, 715 (N.J. Super. Ct. App. Div. 1996).

viable until Liberty Mutual demonstrated that it was prejudiced by the failure to notify.

Kmart contends that to determine this conflict of laws issue, discovery must first occur to acquire facts necessary to determine the conflict of laws analysis. Liberty Mutual, however, contends Illinois law applies because there is a choice of law provision in the Master Agreement, which states,

> [t]his agreement and all aspects of the business relationship between licensor and licensee shall be deemed to have been executed and delivered in Chicago, Illinois. . ."[24]

Acknowledging that Kmart seeks remedy under the Policy and that there is no choice of law provision in the Policy, Liberty Mutual theorizes that the Master Agreement's requirement that Footstar provide Kmart with liability insurance is an "aspect of the business relationship" and, therefore, the choice of law provision in the Master Agreement is incorporated into the Policy. However, Liberty Mutual was not a party to the Master Agreement, and Liberty Mutual cites to no authority supporting its incorporation theory. Thus, the Court is unwilling to decide the choice of law question based on the provision set forth in the Master Agreement. The Court believes it will be more appropriate to decide this issue after discovery is complete. Furthermore, the Court finds, as discussed below, that for purposes of a motion to dismiss, the Amended Complaint alleges compliance with the notice conditions precedent. Therefore, the conflict of laws issue is reserved for later determination.[25]

**B.      Notice Conditions Precedent**

Turning to the core contentions of this motion, Liberty Mutual claims that Kmart's complaint is deficient because it fails to plead facts that demonstrate Kmart satisfied two notice conditions

---

[24]Amended Complaint, Exh A, § 21.7.
[25]For purposes of a full analysis, however, we will cite to, or reference, both Illinois and New Jersey law throughout this opinion.

precedent: "notification of occurrence" and "written notice of suit." Kmart counters that it pleaded generally that all conditions precedent have been complied with and that this is sufficient at this stage in the litigation. Kmart also presents three alternative arguments: (1) it pleaded facts showing that it notified Liberty Mutual as soon as it was given access to the Policy; (2) it pleaded facts showing that Liberty Mutual had actual notice; and (3) it was not required to notify Liberty Mutual.

We will first turn to the "notification of occurrence" and "written notice of suit" arguments. The "notification of occurrence" condition precedent states,

> You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.[26]

The "written notice of suit" condition precedent states,

> If a claim is made or "suit" is brought against any insured, you must:
>
> (1) Immediately record the specifics of the claim or "suit" and the date received; and
>
> (2) Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.[27]

In its Amended Complaint, Kmart pleaded,

> [a]ll of the conditions precedent to coverage provided in the Policy have been complied with. In the alternative, Liberty Mutual has waived compliance with all conditions precedent and/or is estoped from asserting or relying on the conditions precedent in the Policy."[28]

Kmart argues this statement is sufficient to plead conditions precedent and references Federal Rule of Civil Procedure 9(c).[29] Rule 9(c) states,

> [i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent

---

[26] Amended Complaint, Exh B, § IV, Commercial General Liability Coverage Form, p. 15 of 25.
[27] Amended Complaint, Exh B, § IV, Commercial General Liability Coverage Form, p. 15-16 of 25.
[28] Amended Complaint, ¶ 49.
[29] Fed. R. Civ. Pro. 9(c).

have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."[30]

Liberty Mutual counters that Rule 9(c) does not allow for a general statement on conditions precedent and relies principally on the United States Supreme Court's analysis in *Ashcroft v. Iqbal*.[31] Liberty Mutual argues that *Iqbal* requires a complaint to be pleaded in greater factual detail. However, Liberty Mutual's reliance on *Iqbal* is misguided. That case dealt with the general notice pleading standard under Rule 8.[32] *Iqbal* did not involve Rule 9(c)'s standard for pleading conditions precedent. The extension of *Iqbal* to the pleading of conditions precedent would effectively amend Rule 9(c) and, in fact, Liberty Mutual acknowledges that no Court has so held. Courts have allowed parties seeking insurance coverage to plead conditions precedent in an almost identical way to the conditions precedent allegation in the Amended Complaint here.[33] The Court finds, therefore, that Kmart's pleading of compliance with conditions precedent in the complaint is proper and does not warrant dismissal under Rule 12(b)(6).

Kmart also has raised three additional arguments that make dismissal with respect to the notice requirements inappropriate at this time. First, Kmart argues that it pleaded facts that demonstrate that it did not have access to the Policy. Kmart alleges that it was not given access to the Policy until September 30, 2009, and only then could it discern that the Policy applied to the

---

[30] *Id.*
[31] 129 S. Ct. 1937 (2009).
[32] *Iqbal*, 129 S. Ct. at 1942-43.
[33] *See e.g. Norring v. Private Escapes, LLC,* No. 09-2081, 2010 WL 963293, at *5 (M.D. Fla. Mar. 12, 2010) (stating, "Plaintiff's allegation in the Complaint that all conditions precedent were satisfied" fulfills the pleading requirement for conditions precedent under Rule 9(c)); *Mortenson v. Nat'l Union Fire Ins. Co.,* No. 99-2419, 1999 WL 608709, at *2 (N.D. Ill. Aug. 4 1999)(noting that the plaintiff "need only allege generally that he performed all conditions precedent to recovery under the policy"); *Sara Lee Corp. v. Litton Indus. Automation* Sys, Inc., No. 91-0971, 1992 WL 22693, at *2 (N.D. Ill. Feb. 6, 1992) ("Thus, under Rule 9(c), a general allegation that conditions precedent have been performed or excused is ordinarily sufficient.").

Underlying Suit.[34] Liberty Mutual's only counter to this proposition is that the Master Agreement required Footstar to obtain liability insurance for Kmart, and that a Fortune 500 company, like Kmart, would know that it was insured under the Policy. This position does not convince the Court that Counts III and IV should be dismissed. However sophisticated a large corporation may be, it would be premature to say Kmart knew that it was covered under the Policy.

Kmart's second alternative argument is that the Amended Complaint alleges that Liberty Mutual had actual notice of the Underlying Suit. While Liberty Mutual concedes that it was aware of the Underlying Suit, it maintains that the amended complaint in the Underlying Suit never named Footstar as a defendant, thus, never triggered its duty to defend. Under either Illinois or New Jersey law, once an insurer receives actual notice of a lawsuit, the insurer's duty to defend is triggered.[35] An insurer has actual notice when the insurer knows "that a cause of action has been filed and that the complaint falls within or potentially within the scope of coverage of one of its policies."[36] Furthermore, a lawsuit's complaint along with additional facts not in the complaint can contribute to the insured's knowledge that a suit potentially falls within the scope of coverage.[37] Upon obtaining actual notice, the insurer is required to ask the insured whether its involvement is desired.[38]

Liberty Mutual argues that its duty to defend was never triggered because the complaint from the Underlying Suit did not contain sufficient facts showing that the Underlying Suit fell within the

---

[34] Amended Complaint, ¶ 34.
[35] *Cincinnati Cos. v. West Am. Ins. Co.*, 701 N.E.2d 499, 505 (Ill. 1998); *but see SL Indus., Inc. v. Amer. Motorists Inc. Co.,* 607 A.2d 1266, 1272 (N.J. 1992) (noting that under New Jersey law, the insurer's duty to defend is not triggered solely by what is contained in a third party's complaint against the insured, but the insured's knowledge of additional facts as well).
[36] *Cincinnati Cos.*, 701 N.E.2d at 505-06.
[37] *American Economy Ins. Co. v. Holabird and Root*, 886 N.E.2d 1166, 1171-72 (Ill. App. Ct. 2008).
[38] *Cincinnati Cos.*, 701 N.E.2d at 504.

Policy. Liberty Mutual further contended in oral argument that Kmart cannot now "create coverage" merely by pleading that the Underlying Suit falls under the Policy. Kmart disagrees, arguing that the complaint in the Underlying Suit is not the sole trigger of defense. Although it is true that the Underlying Suit triggers Liberty Mutual's duty to defend, under both Illinois and New Jersey law, Kmart also can plead that Liberty Mutual was aware of additional facts that demonstrate Liberty Mutual's knowledge that the suit potentially fell within the scope of the Policy.[39]

Kmart has done this. In its Amended Complaint, Kmart pleaded that it advised Footstar of the Underlying Suit and that, in turn, Footstar notified Liberty Mutual of the Underlying Suit.[40] Further, Kmart alleges that Liberty Mutual agreed to defend Footstar and attended a mediation conference between Kmart and Patrick, aimed at settling the Underlying Suit.[41] These allegations, which for purposes of this motion we must presume to be true, show that Liberty Mutual had knowledge that the Underlying Suit "potentially fell within" the Policy. Also, there are additional allegations in the proposed Second Amended Complaint that further detail Liberty Mutual's knowledge that the suit potentially fell within the scope of the Policy. For example, Kmart points to two diary entries written by Liberty Mutual employees and argues that they show Liberty Mutual anticipated that Kmart might request coverage and that Liberty Mutual should avoid providing such coverage: "I would resist a tender from K-mart if it comes. . . I would not contact anyone from K-Mart. . . ;" and "At this point, there is no claim against Footstar and the claim is only against KMART. [Footstar] wants us to keep a low profile."[42] Kmart, therefore, sufficiently pleaded compliance with the notice conditions precedent in both the Amended Complaint and the proposed

---

[39] *American Economy Ins. Co.*, 886 N.E.2d at 1171-72; *SL Indus., Inc.,* 607 A.2d at 1272.
[40] Amended Complaint, ¶¶ 26-7.
[41] Amended Complaint, ¶¶ 28, 32.
[42] Proposed Second Amended Complaint, ¶¶ 43-44.

Second Amended Complaint.

Finally, Kmart argues that it did not have an obligation to notify Liberty Mutual. Kmart contends only that the "Named Insured," Footstar, was required to notify Liberty Mutual, not additional insureds like Kmart. Kmart then cites to the Policy's general definition of "you," which references the "Named Insured" as distinct from the "insured."[43] But Liberty Mutual counters that all insureds were required to provide notice and cites to a separate provision in the policy that defines "you" but only as that term is used in the notice provisions.[44] The Court has reviewed the various definitions of "you," "Named Insured," and "who is insured" contained in the Policy, but as it is not necessary for us to reach this question at this point in the litigation, we decline to do so.

C. **Consent to Settlement Conditions Precedent**

Moving to the next set of conditions precedent, Liberty Mutual argues Counts III and IV should be dismissed because Kmart pleaded facts that prove Kmart failed to comply with two conditions precedent in the Policy prohibiting the payment of the settlement and the incurring of legal fees without Liberty Mutual's participation. Specifically, Liberty Mutual points to the Policy's "no voluntary payment" and "no legal action against us" conditions precedent. The "no voluntary payment" condition precedent states,

> No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.[45]

The "no legal action against us" condition precedent provides,

> No person or organization has a right under this Coverage Part:

---

[43] Amended Complaint, Exh B, Commercial General Liability Coverage Form, p. 1 of 25.
[44] Amended Complaint, Exh B, Commercial General Liability Coverage Form, Part P, p. 12 of 13.
[45] Amended Complaint, Exh B, § IV, Commercial General Liability Coverage Form, p. 16 of 25.

> b. To sue us on this Coverage Part unless all of its terms have been fully complied with.
>
> A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part. . . An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.[46]

Liberty Mutual asserts that the $141,755.92 in legal fees spent by Kmart in defending the Underlying Suit and the $300,000 in settlement paid from Kmart to Patrick that are pleaded in the complaint show that Kmart failed to comply with these Consent to Settlement conditions precedent. Failure to comply with a "no voluntary payment" or a "no legal action against us provision" prevents the insured from seeking coverage.[47] However, if the insurer wrongfully fails to defend the insured, the insured is relieved of compliance with these provisions.[48] Kmart essentially concedes noncompliance with the Consent to Settlement conditions precedent but counters that Liberty Mutual's failure to defend excuses compliance with these conditions precedent. Kmart pleaded in its Amended Complaint that Liberty Mutual refused to defend Kmart.[49] Furthermore, as previously discussed, there are sufficient facts pleaded in the Amended Complaint that, taken as true for purposes of this motion, show that Liberty Mutual knew that the Underlying Suit "potentially fell within" the Policy, thereby triggering its duty to defend.[50] The Court notes additionally that Liberty Mutual's contention, without citing to any authority, that Kmart is required to plead the date, the

---

[46] Amended Complaint, Exh B, Commercial General Liability Coverage Form, § IV, p. 16 of 25.
[47] *Westchester Fire Ins. Co. v. Heileman Brewing Co., Inc.,* 747 N.E.2d 955 (Ill. App. Ct. 2001)(upholding "no voluntary payment" conditions precedent in Illinois); *Fireman's Fund Ins. Co. v. Sec. Ins. Co. Of Hartford*, 367 A.2d 864, 868 (N.J. Super. Ct. App. Div. 1976)(upholding "no legal action against us" and "no voluntary payment" conditions precedent in New Jersey); *Piper v. State Farm Mutual Auto. Ins. Co.*, 116 N.E.2d 86, 87 (Ill App. Ct. 1953)(upholding "no legal action against us" conditions precedent in Illinois).
[48] *Loeber Motors, Inc. v. Sims,* 340 N.E.2d 132, 136 (Ill. App. Ct. 1975).
[49] Amended Complaint, ¶ 29.
[50] *Cincinnati Cos.,* 701 N.E.2d at 505 (Ill. 1998).

method or manner, the contents, and to whom denial of defense was made is incorrect. These types of facts are "detailed factual allegations," which Rule 8(a)(2) does not require.[51]

Finally, in its memorandum, Kmart briefly argues that Liberty Mutual is required to show that Kmart's failure to comply with the "no voluntary payment" condition precedent prejudiced Liberty Mutual. Kmart then relied more heavily on this position in its oral argument and appeared to extend it to both of the Consent to Settlement conditions precedent. Liberty Mutual did not offer rebuttal to this argument in its briefs or during oral argument. Under New Jersey law, in order for coverage exclusionary provisions to apply, the insurer must show how it was prejudiced by the insured's actions.[52] Similarly, Illinois law requires an insurer to show that it was prejudiced by an insured's failure to comply with a "no voluntary payment" condition.[53] Furthermore, at least one court in Illinois has extended the requirement of prejudice to a condition substantially similar to the "no legal action against us" presented here.[54] The Court also notes that Liberty Mutual seeks protection under the "no voluntary payment" condition and the "no legal action against us" condition for essentially the same reason: they both prohibit the insured from payment of a settlement without Liberty Mutual's consent. At least with respect to the "no voluntary payment" condition precedent, Liberty Mutual will have to demonstrate prejudice as a result of Kmart's failure to comply. As Kmart argues, it is not the insured's responsibility to plead the insurer's lack of prejudice[55] In fact, in its proposed Second Amended Complaint, Kmart pleaded that Liberty Mutual did not object to

---

[51]*Twombly*, 550 U.S. at 545 (2007).
[52]*Ohaus v. Cont'l Cas. Ins. Co.*, 679 A.2d 179, 184 (N.J. Super. Ct. App. Div. 1996)).
[53]*Myoda Computer Ctr., Inc. v. American Family Mut. Ins. Co.*, 909 N.E.2d 214, 218 (Ill. App. Ct. 2009).
[54]*Economy-Wallace Joint Venture v. Commercial Union Ins. Co.*, No. 83-6172, 1984 WL 3247, *3 (N.D. Ill. Mar. 6, 1984).
[55]*U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (noting complaints need not overcome defenses).

settlement even at the mediation conference, which it attended. A fair inference from this is that Liberty Mutual did not consider itself prejudiced by the amount of the settlement. The Consent to Settlement conditions precedent in the Policy do not defeat Kmart's allegations that Liberty Mutual had an obligation to cover its losses arising from the Underlying Suit.

As a final matter, the Court must address Kmart's estoppel argument. Kmart asserts that under Illinois law, dismissal is inappropriate because Liberty Mutual may be estopped from raising conditions precedent as a bar to coverage.[56] Kmart concedes this argument would apply only if Illinois law controls this case. Furthermore, the Court has already determined that none of the conditions precedent raised in this motion bar coverage at this time. Accordingly, we do not have to reach this argument at this stage in the litigation.

**IT IS SO ORDERED**.

**ENTERED: April 14, 2010**

_____

**UNITED STATES MAGISTRATE JUDGE**
**Susan E. Cox**

---

[56] *See Employers Ins. Of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134-35 (Ill. 1999).