UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KMART CORPORATION, a Michigan corporation, | ) ) ) ) No. 09 C 3607 |
| Plaintiff, | ) ) Magistrate Judge Susan E. Cox |
| v. | ) ) |
| FOOTSTAR, INC., a Delaware corporation, and LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Wisconsin corporation | ) ) ) ) ) |
| Defendants. | ) ) |

MEMORANDUM OPINION AND ORDER

Defendant, Liberty Mutual Fire Insurance Company ("Liberty Mutual"), has brought a motion for the entry of a protective order [dkt. 98] and an amended motion for protective order that includes a request for sanctions against Plaintiff, Kmart Corporation ("Kmart") [dkt. 101]. Initially, Liberty Mutual filed only the motion for a protective order, seeking the return of four documents (two letters and two emails) that it claims are privileged and were inadvertently disclosed to Kmart. Liberty Mutual then filed the amended motion claiming that a fifth document, a 126-page claim file, was also inadvertently disclosed. Additionally, the amended motion seeks sanctions against Kmart because, allegedly, Kmart misused the documents in question and then misrepresented the use of these documents in open court. As sanctions, Liberty Mutual requests that this Court dismiss with prejudice Count V of the Second Amended Complaint and bar Kmart's request that Liberty Mutual produce a Federal Rule of Civil Procedure 30(b)(6) witness. For the following reasons, both motions are denied.

**BACKGROUND**

In this case, Kmart is seeking indemnification from Footstar, Inc. ("Footstar") and Footstar's insurer, Liberty Mutual, for an underlying personal injury lawsuit known as the "Patrick lawsuit." The instant motion centers around documents Liberty Mutual produced that relate to a similar coverage lawsuit currently pending in New Jersey ("New Jersey litigation"). The New Jersey litigation is also a suit seeking indemnification between the same parties, but arose out of a different underlying personal injury lawsuit, known as the "Stretavski lawsuit." While the suit before this Court and the New Jersey litigation are not directly related, Kmart sought discovery on Liberty Mutual's handling of the Stretavski lawsuit. Kmart also sought discovery on three additional claims, where Kmart alleges it requested that Footstar and Liberty Mutual defend and indemnify Kmart. However, when Kmart sought the discovery of these four claim files, Liberty Mutual initially resisted. On July 15, 2010, Kmart filed a motion before this Court to compel production of those files.[1] We entered and continued that motion and requested that the parties meet and confer on the dispute before the Court intervened.[2] On July 27, 2010, Liberty Mutual advised the Court that it had agreed to produce the four claim files.[3]

Approximately one week later, on either August 2 or 3, 2010, those claim files were produced.[4] The production comprised of somewhere between 4,330 and 4,461 pages of documents.[5] Contained in this production were two letters, dated October 30, 2009 and December 9, 2009, and

---

[1] Pl's mtn to compel discovery [dkt. 92].
[2] Dkt. 96.
[3] Dkt. 97.
[4] Def's mtn for protective order ¶7 [dkt. 98](stating that the documents were produced on August 3); Pl's opp. to Def's mtn for protective order at 5 [dkt. 107](stating that the documents were produced on August 2).
[5] Def's mtn for protective order ¶7 [dkt. 98](stating that 4,330 documents were produced) Pl's opp. to Def's mtn. for protective order, Exh A, Walker-Bright Aff. ¶10 [dkt. 107-1](stating that 4,461 documents were produced).

two emails, dated April 21, 2010 and April 22, 2010, that relate to the Stretavski lawsuit. Liberty Mutual now states that these four documents contain attorney-client protected communications, are privileged, and were mistakenly disclosed. Also contained in that production was a 126-page claim file from the Stretavski lawsuit. Liberty Mutual asserts that this claim file is also privileged because it contains references to the confidential October 30, 2009 letter.

Liberty Mutual asserts it discovered its mistake at the deposition of Patricia Aurichio on August 6, 2010, when Kmart tried to ask Ms. Aurichio questions about these documents.[6] Upon realizing this, Liberty Mutual states that its counsel immediately objected.[7] However, the Court has read the transcript of Ms. Aurichio's deposition.[8] During that deposition, Kmart's counsel entered the October 30, 2009 letter into evidence without objection from Liberty Mutual's counsel.[9] Furthermore, the only objections on the grounds of privilege during that deposition relate to documents from the Patrick suit.[10] But Liberty Mutual also submits an affidavit from Liberty Mutual's counsel that states that during Ms. Aurichio's deposition, while off the record, he stated to Kmart's counsel that none of the claim files were to be used because of the potential that they contained privileged information.[11] However, Kmart's counsel submits a conflicting affidavit, which states that the conversation about privileged material pertained only to documents from the Patrick lawsuit and not the other claim files.[12]

On August 18, 2010, Liberty Mutual filed its initial motion to have the documents returned.[13]

---

[6] Def's mtn for protective order ¶9 [dkt. 98].
[7] *Id.*
[8] Pl's opp. to Def's mtn. for protective order, Exh 5, Aurichio dep. trans. [dkt. 107-9].
[9] Pl's opp. to Def's mtn. for protective order, Exh 5, Aurichio dep. trans. at 157 [dkt. 107-9].
[10] Pl's opp. to Def's mtn. for protective order, Exh 5, Aurichio dep. trans. [dkt. 107-9].
[11] Def's reply, Exh 2, Witik Aff. ¶8 [dkt. 109-2].
[12] Pl's sur-reply, Exh. A, Walker-Bright Aff. ¶¶3-4 [dkt. 110-1].
[13] Dkt. 98.

The parties then appeared before the Court on August 24, 2010 and we set a briefing schedule on the issue of whether Liberty Mutual had waived its privilege with regard to these documents.[14] At that proceeding, Liberty Mutual also expressed concern that while this motion was pending, the documents in question could be turned over and used by Kmart's counsel in the New Jersey litigation.[15] However, Kmart assured the Court and Liberty Mutual's counsel that, according to Federal Rule of Evidence 502, Kmart's counsel was required to sequester the documents until this motion was resolved.[16] Kmart's counsel stated that he had advised counsel in the New Jersey litigation to sequester these documents as well.[17] Then, on September 3, 2010, Liberty Mutual filed the amended motion now before us seeking sanctions against Kmart, alleging that Kmart's counsel made misrepresentations in open court and improperly disclosed the documents.[18] According to Liberty Mutual, it had learned, after the August 24 court date, that Kmart's counsel in the New Jersey litigation had obtained the documents in question prior to the August 24 court date. Liberty Mutual alleges that this disclosure was improper and that Kmart's counsel misrepresented the disclosure to the Court.

## ANALYSIS

The Court is presented with two issues. First, we must determine whether Liberty Mutual waived the privilege by disclosing the Stretavski documents to Kmart. Second, we will decide whether Kmart's counsel made misrepresentations regarding the documents and/or misused the documents to the extent that sanctions are warranted.

---

[14] Dkt. 100.
[15] Trans. of Proceedings, dated August 24, 2010 at 4 [dkt. 105].
[16] *Id.* at 5.
[17] *Id.*
[18] Dkt. 101.

**A. Inadvertent Disclosure and Waiver**

Liberty Mutual argues that certain documents, privileged under Federal Rule of Civil Procedure 26(b)(1) and (3), were inadvertently disclosed and asks this Court to issue an order that would permit Liberty Mutual to "reclaw" the documents. Specifically, Liberty Mutual invokes the attorney-client privilege. The Court, however, is somewhat confused about which documents Liberty Mutual wishes to reclaw. Initially, in its opening brief, Liberty Mutual referenced only the two letters and two emails. In its amended motion, Liberty Mutual added the 126-page claim file from the Stretavski lawsuit, claiming that portions of this file are privileged because of references in that file to the October 30, 2009 letter. However, in its reply brief, Liberty Mutual does not seek return of the 126-page claim file in its prayer for relief.[19] Ultimately, we believe that, despite the confusing nature of Liberty Mutual's request, Liberty Mutual is in fact seeking the return of the 126-page claim file as well because it references attorney-client privileged communications.

When deciding whether a party should be permitted to reclaw documents, courts previously used a three-step analysis that was outlined in *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*.[20] First, the court determined whether the documents at issue were in fact privileged.[21] Second, the court decided whether the disclosure was inadvertent.[22] Third, the court analyzed whether the privilege was in fact waived.[23] To decide whether the privilege was waived, the court used a "balancing approach" that required consideration of the following five factors: "(1) the reasonableness of the precautions taken to prevent disclosure; (2) the time taken to rectify the error;

---

[19] Def's reply at 9 [dkt. 109].
[20] 529 F.3d 371, 387-88 (7th Cir. 2008).
[21] *Id.*
[22] *Id.*
[23] *Id.*

(3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness."[24] This procedure, known as the *Judson* test, was somewhat modified with the adoption of Federal Rule of Evidence 502(b). Rule 502(b) states that disclosure of an attorney-client communication is not waived if (1) the disclosure was inadvertent, (2) the holder of the privilege took reasonable steps to prevent disclosure, and (3) the holder promptly took reasonable steps to rectify the error.[25]

Despite the adoption of Rule 502(b), analysis of inadvertent disclosure and waiver remains mostly unchanged. The first step of the analysis still requires the court to determine whether the documents in question are privileged.[26] If they are, the second step requires the court to determine whether disclosure was inadvertent.[27] If disclosure is deemed to be inadvertent, at the third step it must be determined whether reasonable steps were taken to prevent disclosure.[28] The fourth, and final, step requires courts to analyze whether the disclosing party took prompt and reasonable steps to rectify the disclosure error.[29]

*1. Attorney-Client Privilege*

As stated, the first step of the analysis is to determine whether the documents are in fact protected by the attorney-client or work-product privilege.[30] Here, Liberty Mutual claims the documents are protected by the attorney-client privilege. The Seventh Circuit has defined the scope of attorney-client privilege to be: (1) where legal advice is sought; (2) from a professional legal

---

[24]*Id.* at 388-89.
[25]Fed. R. Evid. 502(b).
[26]*Heriot v. Byrne,* 257 F.R.D. 645, 655 (N.D. Ill. Mar. 20, 2009).
[27]*Id.*
[28]*Id.*
[29]*Id.*
[30]Fed. R. Evid. 502; *see also Heriot*, 257 F.R.D. at 655.

advisor in his or her capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his or her instance permanently protected; (7) from disclosure by the client or the legal advisor; (8) except where the protection is waived.[31] Kmart does not dispute that the documents would be, under typical circumstances, privileged. Therefore, we assume that the privilege applies to the documents in question.

*2. Inadvertent Disclosure*

Next, we must decide whether the disclosure of these documents was inadvertent.[32] However, inadvertent is not defined by Rule 502(b), and courts in our district have differing views on how to decide whether the disclosure was inadvertent. One view is to apply relevant factors, such as the number of documents involved, the procedures used to review the documents before they were produced, the actions taken to rectify the error, and the extent of disclosure balanced against the scope of discovery.[33] The alternative view is that Rule 502(b) invites a "much simpler" analysis.[34] "[E]ssentially asking whether the party intended a privileged or work-product protected document to be produced or whether the production was a mistake."[35] We find the simpler analysis more compelling because it would seem repetitive to apply factors from the balancing approach when Rule 502(b) explicitly requires examination of some of those same factors later in the analysis.[36] Here, we do not think that there is any real dispute that Liberty Mutual mistakenly produced the

---

[31]*U.S. v. White*, 950 F.2d 426, 430 (7th Cir.1991).
[32]Fed. R. Evid. 502(b)(1).
[33]*Id.* at 658-659.
[34]*Coburn Group, LLC v. Whitecap Advisors LLC*, 640 F.Supp.2d 1032, 1038 (N.D. Ill. Apr. 7, 2009).
[35]*Id.*
[36]*Coburn Group, LLC,* 640 F. Supp. 2d at 1038 (stating that "subparts (b)(2) and (b)(3) separately address the reasonableness of the privilege holder's steps to prevent disclosure and to rectify the error. That they are set out as separate subparts distinct from the question of inadvertent disclosure strongly suggests that the drafters did not intend the court to consider for subpart (b)(1) facts such as the number of documents produced only to repeat the consideration of those same facts for subparts (b)(2) and (b)(3).").

documents. Therefore, we find the disclosure inadvertent.

*3. Reasonable Steps Taken to Prevent Disclosure*

At step three, we must decide whether Liberty Mutual took reasonable steps to prevent that disclosure.[37] In deciding this, courts agree that relevant factors from the previous balancing approach may be used to guide our decision.[38] One relevant factor the court can consider is the number of documents reviewed.[39] Here, Liberty Mutual produced close to 4,500 pages of documents, which is a fairly significant number of pages.[40] However, Kmart notes that a majority of these pages, approximately 4,200, consisted of public documents from lawsuits, such as pleadings. Kmart argues it would take little time to determine that these documents were not confidential. This would leave only approximately 300 pages of potentially confidential documents for Liberty Mutual to review in detail. Therefore, the screening of these documents may be less arduous than it would appear at first blush.

Another factor to consider is the number of privileged documents disclosed balanced against the scope of discovery.[41] "[T]he broader the scope of the discovery, the more extensive a party's disclosure of confidential materials may be without waiving the privilege, and vice versa."[42] While initially Liberty Mutual suggested only four pages of documents were inadvertently disclosed, in its amended motion Liberty Mutual makes clear that another 126-page document also contains

---

[37]Fed. R. Evid. 502(b)(2).
[38]*See Heriot v. Byrne,* 257 F.R.D. at 655; *see also Coburn Group, LLC ,* 640 F.Supp.2d at 1038-39.
[39]*Coburn Group, LLC ,* 640 F.Supp.2d at 1038-39.
[40]*See Wunderlich-Malec Systems, Inc. v. Eisenmann Corp.*, No. 05-4343, 2007 WL 3086006, at *3 (stating that 11,167 pages "is a relatively large number"); *see also Harmony Gold U.S.A., Inc. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. Nov. 6, 1996) (stating that 25,000 was a large number of documents); *see also Harris Corp. v. Amperex Elec. Corp.*, No. 86-6338, 1987 WL 4847, at *1 (N.D.Ill. May 15, 1987) (finding inadvertent disclosure where 7,864 total pages of documents were produced).
[41]*Coburn Group, LLC ,* 640 F.Supp.2d at 1039.
[42]*Heriot,* 257 F.R.D. at 659 (citing *Wunderlich-Malech Sys., Inc. v. Eisenmann Corp.*, No. 05-4343, 2007 WL 3086006, at *3 (N.D.Ill. Oct. 18, 2007)).

privileged information. Despite this, we do not believe 130 pages of approximately 4,500 pages is a significant mistake: Liberty Mutual seeks return of less than 3% of the materials produced. However, we note again that it may have been easy for Liberty Mutual to identify that a large number of these documents were not privileged because they were pleadings from the other lawsuits.

The Advisory Committee Notes to Rule 502(b) suggest that the Court can also consider time constraints placed on the party when considering the process used prior to production.[43] Liberty Mutual notes that it produced the documents in only a week's time, so that the documents would be produced in time for Ms. Aurichio's deposition. According to Kmart, however, it did not require that these documents be produced prior to Ms. Aurichio's deposition.[44] Kmart also points out that Liberty Mutual made no attempt to reschedule the deposition.[45] Liberty Mutual does not refute these statements. Therefore, it appears that the time constraint was self-imposed. We note that ultimately Liberty Mutual agreed to produce these documents, and despite what is stated throughout Liberty Mutual's briefs, this Court did not order the production. Therefore, we find Liberty Mutual's time constraint argument unavailing.

Liberty Mutual's counsel, however, submits an affidavit stating that he reviewed the documents, personally, "with an eye toward identifying any 'attorney-client' or 'work-product' privileges issues."[46] These are insufficient facts for us to conclude that the steps taken to prevent disclosure were reasonable. Liberty Mutual does not discuss software used to prevent disclosure, any sort of records management system that was put in place, or any other specific facts which

---

[43] Fed. R. Evid. 502(b) Advisory Committee Notes.
[44] Pl's opp. to Def's mtn. for protective order, Exh A, Walker-Bright Aff. ¶9 [dkt. 107-1].
[45] Pl's opp. to Def's mtn. for protective order, Exh A, Walker-Bright Aff. ¶9 [dkt. 107-1].
[46] Def's reply, Exh. 1, Judge Aff. ¶6 [dkt. 109-1].

would demonstrate to this Court that a sufficient screening process was used.[47] Liberty Mutual must support its assertion that it used a reasonable process with facts and it has not done so.[48]

Considering all these factors, we find the steps taken to prevent disclosure were not reasonable. First, a large percentage of the documents that were produced were public court documents and, therefore, it would not have been difficult to review these documents for privilege. Furthermore, the quick manner in which the documents were produced was self imposed by Liberty Mutual. Finally, Liberty Mutual has not provided the Court with enough facts to allow us to conclude that the procedures taken were reasonable.

*4. Reasonable Steps to Rectify the Error*

For purposes of a full analysis we will consider the final step of the Rule 502(b) analysis, where we must decide whether Liberty Mutual took reasonable steps to rectify its inadvertent disclosure error.[49] Liberty Mutual initially argues that it objected at Ms. Aurichio's deposition immediately upon learning about the privileged material. However, the deposition transcript does not show such an objection. In fact, Kmart's counsel entered the October 30, 2009 letter into evidence without any objection from Liberty Mutual's counsel.[50] Liberty Mutual argues, however, that its counsel had a conversation with Kmart's counsel off the record. In this conversation, Liberty Mutual's counsel advised Kmart's counsel not to use any claim files because of privilege issues.[51] However, Kmart's counsel also submits an affidavit, which states that the conversation off the

---

[47]*See* Fed. R. Evid. 502(b) Advisory Committee Notes (stating, "[d]epending on the circumstances, a party that uses advanced analytical software applications and linguistic tools in screening for privilege and work product may be found to have taken 'reasonable steps' to prevent inadvertent disclosure. The implementation of an efficient system of records management before litigation may also be relevant.")

[48]*See Comrie v. Ipsco, Inc.*, No. 08-3060, 2009 WL 4403364, at *2 (N.D. Ill. Nov. 30, 2009).

[49]*See* Fed. R. Evid. 502(b)(3).

[50]Pl's opp. to Def's mtn. for protective order, Exh 5, Aurichio dep. trans. at 157 [dkt. 107-9].

[51]Def's reply, Exh. 2, Witik Aff. ¶8 [dkt. 109-2].

record concerned claim files from the Patrick claim only.[52] Provided only with these dueling affidavits, the Court cannot conclude with certainty that counsel for Liberty Mutual objected to the use of the Stretavski file.

Furthermore, Liberty Mutual did not file this motion until twelve days after the deposition. If it discovered that letters containing confidential attorney-client communications were disclosed, a reasonable step would be to file a motion within a matter of days. In the alternative, Liberty Mutual could have promptly sent a letter to Kmart claiming the privilege, but the parties have not mentioned any such correspondence.[53] Moreover, Liberty Mutual did not notify anyone about the 126-page claim file until September 3, 2010, almost one month after Ms. Aurichio's deposition. While Rule 502 does not require post-production review for confidential material, once an error is observed a party is required to properly follow up.[54] Therefore, once Liberty Mutual became aware of the letters and emails, we think Liberty Mutual was required to look into other possible errors in this production. We do not believe, therefore, that Liberty Mutual promptly took reasonable steps to rectify the alleged error.

Considering all of these factors together, we find that Liberty Mutual is not entitled to reclaw the documents in question. While we believe the disclosure was inadvertent, Liberty Mutual has not shown that reasonable steps were taken to prevent disclosure. In addition, we do not find that Liberty Mutual took reasonable steps to correct its mistake.

---

[52] Pl's sur-reply, Exh. A, Walker-Bright Aff. ¶¶3-4 [dkt. 110-1].
[53] *Heriot*, 257 F.R.D. at 659 (finding that the privilege was not waived where the party claiming the privilege sent a letter to the opposing party within twenty-four hours of discovering the error).
[54] Fed. R. Evid. 502(b) Advisory Committee Notes (stating, "[t]he rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake. But the rule does require the producing party to follow up on any obvious indications that a protected communication or information has been produced inadvertently.")

**B. Sanctions**

In its amended motion, Liberty Mutual also seeks sanctions against Kmart for disclosing the documents in question to counsel for Kmart in the New Jersey litigation and then misrepresenting this fact in open court. As already stated, Liberty Mutual believes Kmart implied to the Court that it had never disclosed the documents to counsel for Kmart in the New Jersey litigation.

We disagree. Kmart's counsel stated that Rule 502 required Kmart to sequester the documents until we issued our ruling.[55] Further, counsel for Kmart stated that he had informed counsel in the New Jersey litigation to sequester the documents as well.[56] These statements make it clear that the documents were already disclosed to counsel in the New Jersey litigation. Kmart has submitted emails from its paralegal and from counsel in the New Jersey litigation that support these facts.[57] We, therefore, do not believe that Kmart's counsel made any misrepresentations to the Court.

Liberty Mutual also contends that Kmart should have contacted Liberty Mutual after it had discovered the confidential material to determine whether Liberty Mutual intended to waive its privilege. Liberty Mutual argues that the October 30, 2009 letter and the claim file were marked "privileged" and, therefore, this should have alerted Kmart that there was a potential inadvertent disclosure. However, we note that Liberty Mutual concedes in its reply brief that, "[n]ot all entries in the Claim Notes which are captioned 'Attorney-Client Privileged' are actually privileged...."[58] Further, Liberty Mutual cites to no authority that supports the position that an opposing party must verify that a privilege has been waived. Therefore, we do not find Kmart's use of the documents

---

[55]Trans. of Proceedings, dated August 24, 2010 at 4 [dkt. 105].
[56]*Id.* at 5.
[57]*See* Pl's opp. to Def's mtn for sanctions, Exhs. B,C,D [dkts 108-3, 108-4].
[58]Def's reply ¶14.

in this instance inappropriate.

## CONCLUSION

For the foregoing reasons, Liberty Mutual's motion for a protective order is denied [dkt. 98]. The amended motion, which includes a request for sanctions, is also denied [dkt. 101]. The status hearing set for 12/1/10 at 9:30 a.m. is to stand.

**IT IS SO ORDERED**.

**ENTERED: November 2, 2010**

**SUSAN E. COX**
U.S. MAGISTRATE JUDGE