# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Susan E. Cox | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 3607 | **DATE** | 6/6/2011 |
| **CASE TITLE** | Kmart Corporation vs. Footstar, Inc., et al. | | |

**DOCKET ENTRY TEXT**

Defendant Footstar, Inc. seeks an unredacted copy of a letter that plaintiff, Kmart Corporation claims to be protected under the work-product privilege. The Court has reviewed the briefs and the letter at issue *in camera*. We find that it does not fall within the work-product privilege. Footstar's motion is, therefore, granted [166]. We also reviewed Kmart's sur-reply, which we previously allowed to be filed. Kmart's motion to file that brief, therefore, is granted in part [202].

■[ For further details see text below.]      Mailed notice.

## STATEMENT

    In this motion, defendant Footstar, Inc. ("Footstar") seeks an unredacted copy of a letter, written by Sally E. Rock, a former manager of Kmart's Risk Management Department, to Kmart's third party claims administrator ("Rock letter"). But plaintiff, Kmart Corporation ("Kmart"), has claimed the Rock letter to be protected under the work-product privilege. Kmart acknowledges that it inadvertently produced to Footstar the unredacted version of the Rock letter back in January 2011. It also notes, however, that the next day it requested that Footstar sequester or destroy the letter pursuant to the work-product privilege. At the time, Footstar agreed to sequester the letter, though it indicated its disagreement that the Rock letter was within the bounds of the work product privilege. This issue resurfaces only now because Kmart recently produced the Sears/Kmart Claims Examiner's Manual & Guidebook and the Sedgwick Client Service Instructions, which discuss protocol on tendering claims to third parties.[1] The Rock letter also discusses tendering claims to third parties. Its relevance, therefore, is clear. The Court has reviewed the briefs and the Rock letter *in camera*. We find that it does not fall within the work-product privilege. Footstar's motion is, therefore, granted [dkt. 166]. We also reviewed Kmart's sur-reply, which we previously allowed to be filed. Kmart's motion to file that brief, therefore, is granted in part [dkt. 202].

    The work product doctrine is governed by federal law and is codified in Federal Rule of Civil Procedure 26(b)(3), which provides that a party may not discover materials that are: (1) documents or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a party's representative.[2] The party claiming the doctrine has the burden to establish the necessary elements.[3]

    Most relevant to this dispute is the "threshold issue" in any work product determination: whether the document was created in anticipation of litigation.[4] "To establish work product protection, a party must show the primary motivating purpose behind the creation of a document was to aid in possible future litigation."[5] Specifically, "a substantial and significant threat of litigation is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document."[6] The privilege can, however, be overcome if the party seeking production shows a substantial need for the document or that it would suffer undue hardship in getting the information in another way.[7]

## STATEMENT

As brief background, the letter at issue is dated May 24, 2006 and, as noted, briefly addresses what would need to occur to tender a claim to a third party. Kmart's position in this case has been that it timely tendered its third-party claim to Footstar. But Footstar asserts, in an affirmative defense, that Kmart did not notify it of the underlying lawsuit in a timely manner. So any information relating to when Kmart became aware of its option to tender a claim to Footstar is relevant, which would undoubtedly include this particular letter.

Kmart first attempts to claim that this letter discusses thoughts or impressions of litigation, but having reviewed the letter *in camera,* we see no such discussion. Kmart then argues that this letter was, indeed, created in anticipation of litigation. But Kmart's argument here relates only to the fact that the underlying *Patrick* lawsuit had already been filed. In other words, Kmart's interpretation of the privilege is as follows: because the *Patrick* lawsuit was filed, and obviously insurance coverage was at issue, the Rock letter was prepared "because of" that litigation. And the fact that the current litigation - involving Kmart, Footstar, and defendant Liberty Mutual Fire Insurance Company - was later filed in June 2009, the privilege simply extends to the present case. To put it another way, Kmart argues that it was because of the underlying lawsuit that Ms. Rock contacted its third party claims administrator, regarding the possibility of the matter being tendered to a third party, so this means that litigation was the "primary motivating purpose" behind the letter's creation.

This reading of the work-product privilege, however, is misguided. There is no indication that Ms. Rock was writing to Kmart's third party claims administrator for any other reason than to note the rules governing the tender of a claim, and who, if necessary, such a claim would be directed to. The purpose of the qualified privilege for attorney work product "is to establish a zone of privacy in which lawyers can analyze and prepare their client's case free from scrutiny or interference by an adversary."[8] Though the work product doctrine can certainly apply to documents created by representatives, not just counsel, the Rock letter is not, in any way, an analysis for litigation, or preparation for trial. So though Kmart correctly cites to several cases for the proposition that once the work-product privilege is found to exist, it can endure "after termination of the proceedings for which the documents were created," here the privilege did not exist in the first instance.[9]

Kmart's next argument is its assertion that Footstar has failed to show substantial need for the Rock letter, even if the privilege exists. If a document is found to be privileged under the work-product doctrine, a party may still show "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means," making the document discoverable.[10] Here, Kmart puts considerable emphasis on the fact that Footstar has taken three 30(b)(6) depositions of Kmart on the topic of notice and the Sears/Kmart Claims Examiner's Manual & Guidebook. The essence of Kmart's argument is that three days of testimony should be sufficient.

We disagree. The Rock letter relates directly to Footstar's late notice defense. We do not know what testimony was garnered from the three days of testimony by the 30(b)(6) witnesses. But on this specific issue, with Footstar only recently obtaining the protocol on tendering claims to third parties (which, we note, was the result of a separate motion to compel), we find the "substantial need" requirement met.[11]

As a final point, the parties submit dueling affidavits on the issue of whether, at one point, Kmart agreed to produce the Rock letter without redacting the information relating to tendering claims to third parties. Because each party has a different view of the events that transpired, and any agreements that may have been made, we see no reason to further analyze the issue. What is relevant, at this point, is whether the Rock letter is protected by the work-product privilege or whether Footstar has demonstrated substantial need for it. Because we find that it is not privileged, and that Footstar has shown a substantial need for the letter, what agreement the parties may or may not have come to is of no import.

1. Def's Reply, p. 3 & Exh. C, dkt. 203.

2. Fed.R.Civ.P. 26(b)(3); *Caremark, Inc. v. Affiliated Computer Services, Inc.,* 195 F.R.D. 610, 613-14 (N.D.Ill. 2000) (citing 8 WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2024 (1994)).

3. *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996).

4. *Caremark, Inc.*, 195 F.R.D. at 614.

5. *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 321 (N.D. Ill. 2008).

6. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 87 (N.D. Ill. 1992) (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991).

7. *Logan*, 96 F.3d at 976.

8. *Hobley v. Burge,* 433 F.3d 946, 949 (7th Cir. 2006).

9. *See Hobley,* 433 F.3d at 949.

10. Fed.R.Civ.P. 26(b)(3).

11. *See* Fed.R.Civ.P. 26(b)(3)(ii).