# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KMART CORPORATION, a Michigan corporation, | ) ) ) No. 09 CV 3607 |
| Plaintiff, | ) ) Magistrate Judge Susan E. Cox |
| v. | ) ) |
| FOOTSTAR, INC., a Delaware corporation, LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Wisconsin corporation, | ) ) ) ) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER[1]

Kmart Corporation ("Kmart") has filed a Motion for Clarification and/or Reconsideration [dkt. 261] of our March 30, 2012 ruling[2] that partially granted Kmart's motion for summary judgment[3] and denied the cross-motions of Liberty Mutual Fire Insurance Company ("Liberty") and Footstar, Inc. ("Footstar").[4] Kmart raises three arguments: (1) that the Court must either clarify that Liberty is required to indemnify Kmart for the full $310,000.00 settlement amount or reconsider any decision to the contrary; (2) that Liberty has failed to dispute Kmart's bad faith argument and, thus, summary judgment should be granted for Kmart on this issue, and; (3) that the Court must reconsider its decision to award Kmart defense costs beginning on January 24, 2008, as opposed to in June 2007. We deny Kmart's motion on all three grounds.

---

[1] On August 25, 2009, by the consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (dkts. 21, 22).
[2] March 30 2012 Order, dkt. 260.
[3] Dkt 208.
[4] Dkt. 211.

## A. Indemnification

Kmart argues that the Court's analysis of Liberty's indemnification obligation is limited to its statement that "[t]he indemnification obligation of Footstar and Liberty depends on a factual determination of the relative fault of Footstar in causing the Patrick Injury." In fact, the Court repeatedly cited the contractual language bearing on Liberty's indemnification obligation and thoroughly treated Kmart's argument that Liberty should be equitably estopped from denying coverage for indemnification. Ultimately, the Court reached the conclusion that, because the Master Agreement did not indemnify Kmart for its own negligence (and Liberty was not estopped from disclaiming coverage), genuine issues remained as to both Footstar's and Liberty's indemnification obligations because Footstar's relative fault in causing the Patrick injury had not been determined. This conclusion is in accord with the limiting language of the Policy, referenced throughout the Court's Order, which states that Liberty's additional insured coverage of Kmart "applies only to coverage and the limits of insurance required by the [Master Agreement]." Because of this limitation we found that Liberty would not be obligated to indemnify Kmart for Kmart's own negligence. And contrary to its assertions, Kmart never explicitly argued that Liberty was independently required by the terms of the Policy to indemnify Kmart for its own negligence.

Kmart does not dispute that a trial would be necessary to determine Footstar's relative fault–and therefore indemnification obligation–under the Master Agreement. However, Kmart now argues that the Court erred in failing to hold that Liberty must indemnify Kmart for the entire settlement amount.

Section 18.1 of the Master Agreement, the provision that required Footstar to indemnify Kmart for personal injury claims arising out of "[Footstar's] performance or failure to perform," also

required Footstar to purchase insurance for Footstar and Kmart for "personal injury (including death) and property damage arising out of or relating to the goods and services provided pursuant to this Agreement . . ."[5] The Court held that "services," as used here, was not a defined term limited to Footstar's operation of the Footwear Department. The Court observed that Liberty's Blanket Additional Insured Amendment, which governed who was an additional insured and the limitations of coverage, stated:

> Section II - WHO IS AN INSURED is amended to include as an insured any person, organization, state or other political subdivision, trustee or estate for whom you have agreed in writing to provide liability insurance. But:
>
> The insurance provided by this amendment:
>
> > 1: Applies only to "personal injury" or "property damage" arising out of (a) "your work" or (b) premises or other property owned by or rented by you;
> >
> > 2: Applies only to coverage and limits of insurance required by the written agreement, but in no event either exceeds the scope of coverage or the limits of insurance provided by this policy; and
> >
> > 3: Does not apply to any person, organization, state or other political subdivision, trustee or estate for whom you have acquired separate liability insurance while such insurance is in effect, regardless of whether the scope of coverage or limits of insurance of this policy exceed those of such other insurer or whether such insurance is valid or collectable.

Kmart claims to have argued that the language of the Policy indemnifies Kmart for its own negligence. An examination of Kmart's briefs, however, does not support this conclusion. Kmart argues that it "made the point in its summary judgment motion that Liberty Mutual was obligated to indemnify Kmart fully without regard to Footstar's fault or liability."[6] Yet, what Kmart actually

---

[5] Kmart's Exhibit 7 (Master Agreement) at p. 42.
[6] Dkt. 261 at 4 (citing to page 8 of its memorandum).

stated in its memorandum was simply that because Judy Patrick's injuries "arose out of Footstar's work," "Kmart [did] not need to prove it actually was liable to plaintiffs or the true amount of their damages" to recover the settlement amount. This is not the same as arguing that Liberty must fully indemnify Kmart under the Policy even if Kmart caused the injury, and regardless of Foostar's fault.

Kmart's argument that Liberty "did not dispute" that it was required to indemnify Kmart's own negligence is also unpersuasive.[7] Liberty expressly stated that the Policy's additional insured amendment "applies only to coverage required by the written agreement (between Kmart and Footstar),"[8] which would limit coverage to injuries arising out of Footstar's "goods and services."[9] In its reply, Liberty reinforced its position that Kmart's coverage was limited to "the scope required in the written contract,"[10] and thus,"the Master Agreement required Liberty to indemnify and provide additional insured coverage for Kmart only for Footstar's own conduct. . . . "[11] Kmart's reply brief offered no response to Liberty's assertion on this point. Kmart now states, perhaps in explanation of its silence, that "no further argument was necessary" because Liberty had already "conceded the point." Our review finds that Kmart did not expressly argue in its briefs that Liberty was required to indemnify Kmart for its own negligence under the Policy. At the same time, as Kmart observes, Liberty did not expressly argue that its duty to indemnify Kmart was "coextensive" with Footstar's. (We note, however, that the arguments in Liberty's briefs were often difficult to follow).

Kmart now argues that the Policy and New Jersey Law require Liberty to wholly indemnify

---

[7] *Id.*
[8] Dkt. 206 at 18.
[9] *See* dkt 206 at 23 (stating that the additional insured provision applies only "if Kmart's liability arose out of the coverage required by the Master Agreement (Footstar's 'goods' and 'services')").
[10] Dkt. 253 at 2.
[11] *Id.* at 9.

Kmart because "the Court found [that the] suit involved 'personal injury' 'arising out of' Footstar's 'work.'" It is important to note here that the Court did not so find. At page 35 of our analysis of the duty to defend, we found that the Patrick injury *potentially* arose out of Footstar's work, thereby triggering the duty to defend. Given the differing accounts of the Patrick incident, it remains unclear whether the Patrick injury *actually* arose out of Footstar's work; Judy and Tina Patrick argue that Footstar employee, Alex Sehat, pulled down the stroller containing the unsecured carrier which struck Mrs. Patrick, while Mr. Sehat and Kmart employee, Mirabel Hohney, claim that a seemingly inebriated Judy Patrick pulled down the stroller and injured herself. The case was settled out of Court and the cause of the injury remains in dispute, which is why the Court ruled that genuine issues of fact remain.

To fully address Kmart's argument that Liberty should be required to fully indemnify Kmart, regardless of whether Footstar is later determined to be without fault, we take a moment to address the cases that Kmart cites. First, Kmart relies on *Federal Home Loan Mortgage Corp. v. Scottsdale Ins. Co.*[12] for the proposition that a "fact-intensive" inquiry would be unnecessary to determining the scope of additional insured coverage. However, *Federal Home Loan* is not instructive. There, the District Court had already found that the insurer was estopped from denying its duty to indemnify because its wrongful refusal to defend had prejudiced the insured.[13] Under such circumstances, the Court reasoned that "it is irrelevant whether the insurer would have been liable under the policy . . . ."[14]

Kmart also relies on *Krastanov v. K. Hovnanian/Shore Acquisitions*, LLC.[15] In *Krastanov*,

---

[12]316 F.3d 431, 444-445 (3rd Cir. 2003).
[13]*See Federal Home Loan*, 316 F.3d at 444.
[14]*Id.*
[15]2008 WL 2986475, *1 (N.J. App. Div., August 06, 2008).

an employee of plumbing subcontractor F&W drowned while swimming in a man-made lake on Hovnanian's construction site.[16] Hovnanian sued F&W and its insurer, PNMC, for indemnification in connection with the resultant wrongful death claim, arguing that Hovnanian was entitled to indemnification under its subcontracting agreement with F&W.[17] A trial court denied coverage under the theory that Krastanov's claims against Hovanian were for "Hovnian's own negligence in creating a dangerous condition on the property," which was not covered by the subcontracting agreement.[18] Hovanian later learned it was an additional insured on F&W's policy with PNMC, prompting the Court to examine whether "Krastanov's death arose out of F&W's work," thus invoking that coverage.[19] The trial court, in relying on certain provisions requiring F&W to supervise its employees, found that it did.[20]

PNMC argued on appeal that, if Hovanian was not entitled to indemnification from F&W, it could not seek additional insured coverage from F&W's insurer, PNMC. The court examined the service agreement's provision requiring F&W to obtain additional insured coverage for Hovanian for "liability arising out of F&W's work."[21] The Court found that "a fair reading of the prime subcontractor agreement did not make insurance coverage dependent on the applicability of the indemnification clause and no language [in either the agreement or the policy] requires a contractual liability endorsement solely to cover the obligations assumed by the subcontractor under the indemnity provision."[22] Consequently, the Court held that, while "intertwined," F&W's

---

[16]2008 WL 2986475 at *1.
[17]*Id.* at *2.
[18]*Id.*
[19]*Id.*
[20]*Id.* at *3.
[21]*Id.* at *6.
[22]*Id.*

subcontracting agreement was sufficiently separate from the PNMC policy to allow additional insured coverage to extend to Hovanian.[23]

Kmart next cites *Harrah's Atlantic City v. Harleysville*.[24] There, the undisputed facts showed that two patrons of tenant store, TOW, sued landlord Harrah's after they were struck by a car driven by one of Harrah's employees after leaving the store area.[25] The lease required TOW to purchase general liability insurance "in the name of and for the benefit of [Harrah's and TOW]."[26] The additional insured provision of TOW's policy provided coverage to Harrah's "only with respect to liability arising out of the . . .use of that part of the premises leased to [TOW]."[27] The lower court held that a stronger nexus between TOW's action and the patron's injury was necessary for coverage,[28] but the appellate court reversed, finding that "by wording the endorsement as it did, the insurer did not make coverage contingent on whether the tenant had any liability for the accident."[29] The Court reasoned that injuries during a patron's egress fell "within 'the landscape of risk,'" and although TOW itself was not contractually obligated to indemnify Harrah's, the insurer could be required to do so.[30]

Both *Krastanov* and *Harrah's* illustrate that it is possible for an insurer to be independently obligated to indemnify an additional insured, even where the named insured is not so obligated by the terms of the underlying contractual indemnification provision. However, these decisions relied heavily on the particular language of endorsements that were less restrictive than the additional

---

[23] *Id.*
[24] 671 A.2d 1122 (N.J. App. Div. 1996).
[25] *Id.*
[26] *Harrah's*, 671 A.2d at 1123.
[27] *Id.* at 1124.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 1125.

insured provision in Liberty's policy. No case mentions language expressly limiting coverage to that required by the underlying service contract. By contrast, Liberty's additional insured amendment expressly limited its indemnification obligation to "coverage and limits of insurance provided by the [Master Agreement]," which itself provided that Footstar should obtain coverage only for "personal injury . . . arising out of or relating to goods and services provided pursuant to [the Master Agreement]." Further, in both *Krastanov* and *Harrah's*, the "essential" facts surrounding the cause of injuries in the underlying lawsuits were not in dispute. Here, there remains a question as to how Mrs. Patrick was injured, which would seem to hinder the Court's ability to determine whether Mrs. Patrick's injury actually – rather than merely potentially – arose out of Footstar's work, goods, or services under the Master Agreement.

As a final note on this point, Kmart also cites language from *W9/PHC Real Estate LP, et al v. Family Farm Casualty Insurance*.[31] This case does not add much to the analysis. There, the owner and the operator of a business park were named as additional insureds on their snow removal contractor's policy with respect to liability "arising out of" the "ongoing operations performed for the additional insured(s) at the locations described above" or "acts or omissions of the [additional insured] in connection with their supervision of such operations." The snow removal service contract also separately required indemnification of plaintiffs against suits arising out of the contractor's "performance or failure to perform." The court in *W9/PHC Real Estate LP* found a duty to defend the additional insureds where a tenant's employee, who slipped on ice, alleged that plaintiffs and the contractor were negligent in permitting unsafe conditions on the premises, and in "hiring, training, and monitoring of their employees."[32] In so holding, the Court rejected the

---

[31] 970 A.2d 382 (N.J. App. Div. 2009).
[32] 970 A.2d at 389.

meritless argument that the complaint alleged "no acts or omissions [of the additional insureds]" with respect to "their supervision of [snow removal] operations."[33] Given that the complaint's "failure to monitor" allegations fell squarely within the language of the insurance policy, the court rightfully observed that the service contract's indemnity provision was not relevant. Our review finds that the language cited by Kmart from *W9/PHC Real Estate LP* involved the duty to defend - not indemnify - and is limited to the particular facts and circumstances of that case. As with the other cases, it does not change our original analysis on indemnification.

**B.    Bad Faith**

In its motion to reconsider Kmart argues that we must rule, now, on whether Kmart is entitled to summary judgment on its bad faith claim. To the contrary, and as Kmart acknowledges, we specifically reserved the bad faith claim "for later determination." Still, Kmart oddly makes the claim that Liberty did not oppose Kmart's arguments on this issue. But because we reserved this issue for later determination, Liberty properly refrained from addressing this issue in their motion for summary judgment. A motion to reconsider is not the proper forum for an initial review on this point.

**C.    Defense Costs**

Finally, Kmart argues - and we held - that the duty to defend is triggered by facts known to the insurer. But Kmart argues here that once that duty is triggered, the insurer is required to pay or reimburse the insured from that point forward. What the New Jersey case law provides, however, is if the insured "properly and promptly" conveys "the information that it believes will trigger coverage," then "it will be reimbursed for previously-expended defense costs."[34] We so held. We

---

[33]*Id.*
[34]*SL Indus., Inc. V. AM. Motorists Ins. Co.,* 607 A.2d 1266, 1272 (N.J. 1992).

simply determined the start of that coverage to be January 24, 2008, the date when Kmart actually requested coverage. Before that date, Kmart had not "properly and promptly" conveyed any information. Rather, Footstar learned of the *Patrick* lawsuit through general inquiries made by the Patricks' attorney. And, like all parties involved, it only knew that there was uncertainty as to how Footstar was involved. We, therefore, recognized in our Order that facts known to Footstar and Liberty prior to Kmart's formal request for coverage certainly signaled a *potential* for coverage.[35]

Critical to this motion is, however, that no case provides for coverage to begin automatically upon the insurer's knowledge of the potential for coverage, absent an analysis of the actual circumstances in each particular case. In fact, we noted that the insurer is not obligated to act on "extraneous facts" before it conducts its own investigation to determine the truth of those facts.[36] Here, Liberty did, and determined that Mr. Sehat did not know who was at fault for Ms. Patrick's injury. That fact question, as noted, still remains today.

More to the point, contrary to Kmart's claim, we do not believe our decision to limit the recoverable defense costs to those incurred after January 24, 2008, is inconsistent with our determination that "Kmart's violation of the Master Agreement's notice provision did not excuse Footstar's performance under the agreement."[37] We explained that each party was responsible for why it took so long to get everyone at issue, including Kmart. It is true that we did not find that the "insured's delay in providing relevant information prevent[ed] the insurer from assuming control of the defense."[38] But our analysis was broader than that; we assessed not only what Footstar and

---

[35]March 30 2012 Order, dkt. 260 (citing *Abouzaid v. Mansard Gardens Associates, LLC.,* 207 N.J. 67, 86 (2011)) (emphasis added).
[36]March 30 2012 Order, dkt. 260 at 37.
[37]March 30 2012 Order, dkt. 260 at 59.
[38]*SL Indus., Inc. V. AM. Motorists Ins. Co.,* 607 A.2d at 1273.

Liberty knew, and whether that gave rise to the *potential* for coverage (which could thereby trigger a duty to defend), we noted Kmart's delay in asserting its right to a defense. That delay did not prohibit coverage under the duty to defend analysis, but we deemed it relevant to the determination of the date from which to calculate the reimbursement of defense costs. No case that we have found prohibits our analysis, nor does Kmart cite to one.

**IT IS SO ORDERED.**

**ENTERED:** May 1, 2012

_____
**UNITED STATES MAGISTRATE JUDGE**
**Susan E. Cox**